1. PETETIONER'S BRIEF

2. MOTION – EXTENSION OF TIME TO RESPONSE.

3. NOTICE – NON-ACCEPTANCE OF SETTLEMENT

4. CERTIFICATE OF SERVICE

ORAL ARGUMENT NOT YET SCHEDULED

## No. 23-1072

## UNITED STATES COURT OF APPEAL FOR THE DISTRICT OF COLUMBIA CIRCUIT



**MANORANJAN RAO**

Petitioner

vs

SECURITIES AND EXCHANGE COMMISSION

and Vanessa Ann Countryman, Secretary

Respondents

APPEAL AGAINST THE ORDER DETERMINING WHISTLEBLOWER AWARD CLAIM, SECURITIES EXCHANGE ACT OF 1934 RELEASE NO. 96381, WHISTLEBLOWER AWARD PROCEEDING FILE NO. 2023-17 WITH COVER LETTER FROM NICOLE C. KELLY, CHIEF, COMMISSION'S OFFICE OF THE WHISTLEBLOWER TO RAO, DATED NOVEMBER 28, 2022

## PETITIONER'S BRIEF OF APPELLANT – PETITIONER MANORANJAN RAO

Manoranjan Rao - Pro Se Litigant

Flat No. 606C, Maurishka Park,

Kodialbail, Mangaluru,

**INDIA – 575003**

Mob: **+91 95911 23504**

**Manoranjanrao@hotmail.com**

1

TABLE OF CONTENT

PETITIONER'S BRIEF: ...........................................................................................2
JURISDICTIONAL STATEMENT: .........................................................................2
BACKGOUND: .........................................................................................................3
ISSUES PRESENTED FOR REVIEW: ....................................................................4
CHRONOLOGY OF EVENTS: ..............................................................................13
    OBSERVATIONS: ..............................................................................................13
ARGUMENT: ..........................................................................................................17
RELIEF: ...................................................................................................................29
CERTIFICATION AND CLOSING: .......................................................................30

**PETITIONER'S BRIEF:**

**<u>JURISDICTIONAL STATEMENT:</u>**

Section 21F(f) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 21F-13 - A determination of whether or to whom to make an award may be appealed within 30 days after the Commission issues its final decision to the United States Court of Appeals for the District of Columbia Circuit, or to the circuit where the aggrieved person resides or has his principal place of business.

This appeal is against the Order Determining Whistleblower Award Claims, Securities Exchange Act of 1934 Release No. 96381, Whistleblower Award Proceeding File No. 2023-17 with cover letter from Nicole C. Kelly, Chief, Commission's Office of the Whistleblower to Rao, dated November 28, 2022.

2

This appeal is submitted on 12/21/2022 in the US District court, which is transferred to the US Court of Appeal District of Columbia on 03/14/2023 (Ref.: see Document # 1990761: Docket Text - pages 1 to 3)

## BACKGOUND:

In *November 18, 2016*, Petitioner submitted to Respondent, the Whistleblower information on possible securities law violation by GE. On *November 2, 2017*, Respondent opened the Covered Action investigation based on information provided by an individual. In December *9, 2020*, the Respondent settled Covered Action with Company, ordered to pay a $200 million Civil penalty *(see Document # 1993277 SUPPLEMENT to statement [1993275-2] filed by Manoranjan Rao*). In *March 1, 2021,* Petitioner submitted WB-APP Form in line with "Notice of Covered Action 2021-004" and in *April 18,2022 (see document#1990761 pages 54 to 60)* received the "Preliminary Determination of the Claim review staff" denying the Whistleblower Award for the Petitioner, a meritorious claimant *(see document#1990761 pages 63 to 77)*.

The Petitioner contested the Preliminary Determination in writing on *May 26, 2022* (*see document#1990761 pages 78 to 96*) and received a Final Order from the Respondent in Action 2021-004, denying the Whistleblower award application in

the Covered Action*(see Document # 1993278 UNDERLYING DECISION IN CASE submitted by Manoranjan Rao*).

The Petitioner found many anomalies in the process of evaluating & considering Petitioner's claim while denying the Whistleblower award. There are several procedural issues, indications of prejudiced intentions, favoritism towards a non-qualified claimant in the award process, and potential collaboration with the defaulter (GE) in the denial of the Petitioner's claim. The Petitioner is appealing to the honorable court against the decision regarding the award by the Respondent and hereby files an appeal with the details mentioned herein.

**ISSUES PRESENTED FOR REVIEW:**

The Respondent did not comply with *§Section 21F* of the Securities Exchange Act of 1934 listed here with, in violation of *Securities and Exchange Commission Division of Enforcement, Enforcement Manual – Office of the Chief Counsel, dated November 28, 2017, in particular*:

*§240.21F-1:* to pay the whistleblower who provide the original information about violation of Federal securities law. The Respondent failed to comply with the requirement to compensate the whistleblower who provided the original information. In this case, the Petitioner is the provider of accounting irregularities practiced by GE and reported the

4

whistleblower tips to the SEC (Respondent) on November 18, 2016.

**§240.2F-2:** (a) & (b) Whistleblower who provided Information in writing to a possible violation of the federal securities law. The Respondent, in their denial letter, erroneously placed a demand for a detailed report of the misconduct of GE as a condition for considering the whistleblower's claim. However, the requirement for whistleblowers is to report a ***possible violation***, and they are not expected to provide a comprehensive report.

**§240.2F-3:** *Payment of Awards.* This is not followed in the spirit of law and disposition of no further action under section *§240.2F-3-(a)-(3)* is performed on the information dtd. November 18, 2016: no investigation was initiated due to incompetence of the Respondent staff and this cannot be attributable to the Petitioner - Appellant. The failure to investigate the tips, even after deliberation due to the defender's own known reason, resulted in a 75% loss to market capital, equaling to US$186 billion in losses to investors.

The Respondent's omission to conduct a comprehensive forensic investigation of GE's entire accounts, disregarding the information provided by the Petitioner who has no association with the Accounts department, GE Power unit, GE Insurance unit, or any involvement in

the wrongdoing, and settling with a relatively modest penalty of $200 million raises concerns that cannot be easily dismissed. It is imperative to conduct a thorough examination into the potential collusion between the agency and the industry. It is worth noting that the University of Nevada, Reno has duly recognized this scandal as one of the seven worst accounting scandals in U.S. history, further emphasizing the gravity of the situation.

https://onlinedegrees.unr.edu/blog/worst-accounting-scandals/

*§240.2F-4*:   The Petitioner's voluntary submission of information included possible violations in accounting practices, with increased billing and CFOA (Cash from operating activities) generation through deferred monetization transactions with GE Capital. This information was obtained through a telephonic interview with Respondent personnel on December 6, 2016.

The Petitioner requests that the court instruct the Respondent to provide the voice file of the interview, in accordance with *§SEC Enforcement Manual, section 3.2.9.4, which requires compliance with Federal Rule of Civil Procedure 26(a) for preserving evidence in anticipation of litigation*.

Petitioner would bring attention of the court, to <u>OPINION and</u>

ORDER 17-CV-8457 (JMF) of United States District Cout – Southern District of New York – this order details the modus operandi of the Accounting practices by General Electric company during period from 2015 till 2017, which explains the same nucleus of operating facts the Petitioner explained during his interview with Respondent personnel on December 6, 2016 as per *§SEC Enforcement Manual – Voluntary on the record testimony*.

*§240.2F-4*-(b)-(5), *§240.2F-4*-(c)-(1) and *§240.2F-4*-(d) : Respondent accountant (Mr. Patrick Noone) who was part of the proposed disposition (in February 16, 2017) of Petitioner's original information, failed to re-open the Petitioner tips file in November 2, 2017 when the Respondent opened the Covered Action investigation by the same Respondent accountant Mr. Patrick Noone. This clearly shows the inability to act on original information provided by the Petitioner, who is an outsider and not a part of the wrong doing. Failure and incompetence of the Respondent for consideration for investigation, cannot be attributed to denial of award to a meritorious claimant (Petitioner).

*§240.2F-6*: Petitioner consistently co-operated with the Respondent's investigation and took the initiative to explain the complexity of the

7

transactions in question. Despite the Petitioner's effort, the Respondent failed to understand the transactions even after two months of Inquiry (MUI) i.e February 16, 2017(date of disposition).

Furthermore the Petitioner attempted to maintain communication with the Respondent staff by inquiring about the progress of investigation on March 11, 2017, and continues to do so through the years 2017, 2018, 2019 and 2020, by sending emails and asking about the investigation progress *(see ref: Document#1990761 pages 45 to 47).*

Petitioner was not a part of Accounting, GE power unit, or GE Insurance, where the accounting malpractice is declared). Therefore, the Respondent's expectation that the Petitioner provide a detailed report on the wrong doing or accounting misappropriation is not correct, and it does not disqualify the Petitioner from being eligible for an award.

The responsibility of the Whistleblower is to report **possible violations** of securities law and co-operate with the investigating authority. Howevwr it does not include the responsibility of submitting a report. *It should be concluded that it is the responsibility of the Respondent (the authority) to conduct the investigate, reinvestigation and re-opening the Matter Under Investigation (MUI),*

8

*periodically.*

The disposition of the Original information provided by the Petitioner can only be attributed to Respondent's pre-notion not to initiate a covered action investigation due to incompetency of its staff to understand the danger to investors or others presented by the underlying violation - *§240.2F-6-(a)-(3)-(iv)*. By disposition of the original information provided by the Petitioner without proper due-diligence, the Respondent failed to act in time to safe guard the public interest, the promotion of investor protection and uphold the objectives of the Whistleblower program.

The Respondent's staff failed to consider the spirit that *"every situation is different, the staff typically should keep the different consideration in mind when conducting a parallel investigation"* as per *§SEC Enforcement Manual section 5.2.1*

Consequently, the Respondent's failure to take appropriate action to investigate and address the potential violation has resulted in harm to the public interest, investors, and the Whistleblower program's objectives.

*§240.2F-9*: The Petitioner asserts that he submitted the first-hand information about the malicious accounting practices in violating securities law by

9

email with the Subject line "Whistleblower-GE" on November 18, 2016. This information was considered by the Respondent, and correspondence was established from December 01,2021 with a voluntary on-the-record testimony conducted (through Telephone) on December 06,2016, in accordance with *§SEC Enforcement Manual, section 3.3.4*: *Voluntary on the record testimony*. Since the interview occurred within 30 days of the submission of the original information and no request for submission of a TCR form was made by SEC during the entire duration of discussion and investigation, the petitioner asserts that the whistleblower tip dtd. November18, 2016, is deemed accepted by Commission (Respondent) for a whistleblower award under *§240.21F-9-(a)*. It should also be noted that the Commission further processed the inquiry (MUI) with a proposed disposition on Feb 16, 2017, which confirms that the Submitted whistleblower original tip is accepted by the commission without TCR form.

In November 18, 2016, the Petitioner submitted an email with the subject "Whistleblower-GE", to the SEC, reporting accounting malpractice where GE was recording revenue in excess of the contract amounts when multiple of its units worked on contract, as confirmed in *SEC Final order §Exhibit Order -Covered*

action: *Whistle Blower Award Proceeding file No 2023-17(**see document#1990761 Page 103**).* Petitioner reported "a possible violation of securities law by GE" in accordance with *§§240.21F-2-(a) and (b),* which is consistent with the *§SEC: Division of Enforcement: Enforcement Manual dated November 28, 2017, which states in 1.4.1 Mission Statement: "to protect investors from potential violations of the federal securities* law".

On December 6, 2016, Mr. Philips Craig of the Respondent Commission conducted an hour-long interview with the Petitioner, during which the scope of the reported violations was extended to overall accounting practices, non-compliance with US GAAP, auditor oversight, bill discounting through GE Capital for deferred payment, and the overall culture of GE practices. This interview is confirmed in §Exhibit: Email dated December 6, 2016 (*see document#1990761 Pages 32 to 38*).

Petitioner request court to summon, Respondent to submit the voice file of the telephonic conversation between Mr. Philip Craig (Respondent staff) and Petitioner, which took place on December 6, 2016 first half EST.

In *§Exhibit declaration of Michael Franck, section 6 (**see document#1990761 page 105**),* states "Claimant 5 submitted a non-whistleblower complaint in November 2016", which is SEC discretionary effort to distort the truth saying claimant 5 submitted non-compliance information. The subject of the email

11

explicitly states "Whistleblower GE," indicating that the information provided was intended to be submitted as a whistleblower tip. Additionally, since the SEC did not request the Petitioner to resubmit the information in a TCR form, the original submission should be considered valid under §240.21F-9-(a).

The initial investigation into the information provided by the Petitioner started on December 1, 2016, and a telephonic interview/inquiry was conducted on December 6, 2016, between Mr. Philip Craig of the SEC (Respondent) and the Petitioner. The Petitioner listed "all possible violation" is listed by the Petitioner as per *§Exhibit ref. Section 8 and 9 of Response to: §Preliminary* Determination of the claim review staff date. April 18, 2022 *(see document#1990761 Pages 82, 83 and 84).* The facts provided are in accordance with the §Section 240.21F-4-d-1: *"Same nucleus of operative of facts"*. The facts provided by the Petitioner are consistent with this requirement.

According to *§Exhibit - Supplemental declaration of Michael Franck* **(see document#1990761 page 105 and 106***),* Mr. Patrick Noone is the lead accountant on the GE investigation on Covered Action initiated in November 2, 2017. Notably Mr. Patrick Noone was also a party in the proposed disposition of Petitioner's origination whistleblower information/investigation (MUI) in February 16, 2017. However, the Respondent and its staff failed to reopen the original information when conducting the Covered Action investigation for the same defaulter, with

same nucleus of operative facts in November 2017, which is a violation of their duty to properly discharge their office in accordance with §SEC Division of Enforcement - Enforcement manual section 3, and a failure of their internal system transparency. The Petitioner therefore requests the court to summon all relevant files, including the voice file of the telephonic discussion between the Petitioner and Mr. Philip Craig on December 6, 2016.

## CHRONOLOGY OF EVENTS:

The Petitioner seeks to draw the court's attention to the major events that occurred between the submission of Petitioner's Whistleblower Tips with original information on November 18, 2016, and the Respondent's Final Order determining whistleblower award claims on November 28, 2022. These events relate to the Accounting Violations by the Company General Electric and the Covered Action investigation conducted by the Respondent.

**OBSERVATIONS:**

1. From March 2, 2015 through January 23, 2018, GE failed to disclose the GE Power generated cash by monetizing receivables through extensive factoring of Long Term Service Agreements (LTSA) – Inflated Invoicing or Invoicing in advance through Bill discounting through GE Capital.

2. From third quarter of 2015 through first quarter of 2017, GE failed to disclose worsening trends in its insurance business.

3. Petitioner submitted the whistleblower original information (tips) on possible violation of securities law to SEC on November 18, 2016

4. MUI (Matter Under Investigation) started on December 01, 2016.

5. Telephonic interview took between SEC (Respondent) staff and Petitioner on December 6, 2021. Additional details provided on December 6th and 7th 2016 *§Exhibit – Email (see document#1990761 page 30 to 38).*

6. SEC (Respondent) proposed disposition on February 16, 2017 under its limitation in line with *§SEC Division of enforcement – Enforcement manual section* 2.3.2: Procedures for Converting a MUI to an investigation section (4) within sixty days.

7. June 12, 2017: General Electric announced that Chairman and CEO Jeff Immelt will be stepping down. https://www.firstpost.com/world/jeff-immelt-to-retire-as-general-electric-ceo-john-flannery-to-succeed-3550791.html

8. August 1, 2017: John Flannery replaces Jeffrey Immelt as Chief executive officer.

9. October 06, 2017: The top management underwent a makeover as Chief Financial Officer Jeff Bornstein departed and Vice Chairs Beth Comstock and John Rice retired. https://www.ge.com/news/press-releases/beth-comstock-retire-ge

10. <u>October 20, 2017</u>: Flannery offered a harsh assessment of the conglomerate after its earnings missed estimates by a record margin. https://seekingalpha.com/article/4115222-general-electrics-ge-ceo-john-flannery-on-q3-2017-results-earnings-call-transcript

11. <u>October 27, 2017</u>: The Company saw a $100 billion loss in market value for the year to date. https://www.bloomberg.com/news/articles/2017-10-27/ge-s-awful-week-pushes-this-year-s-stock-wipeout-to-100-billion#xj4y7vzkg

12. <u>On November 2, 2017</u>, Enforcement Staff opened the GE MUI (Matter under Inquiry) and obtained a <u>formal order on November 17, 2017</u>, based on information provided by an individual other than Petitioner. *§Exhibit - Declaration of Michael Franck dtd. April 15, 2022(**see document#1990761 pages 63 to 71**)*

13. <u>November 3, 2017</u>: GE rejected suggestions of accounting fraud after a long-time analyst said that the management faced the risk of a legal inquiry

14. <u>November 13, 2017</u>: GE halved its dividend, marking only the second cut after the Great Depression https://money.cnn.com/2017/11/13/investing/ge-dividend-cut/index.html

15. In the <u>third quarter of 2017 and first quarter of 2018</u>, GE made a series of public announcements describing disappointing cash and earnings results in its GE Power business as well as the $9.5 billion pre-tax insurance charge and

required capital contributions of approximately $15 billion over seven years. These issues contributed to GE's almost 75% stock decline during those years.

16. Without fully understanding the significance or evaluating the potential consequences of the whistleblower tip and the hidden accounting practices by GE, the Respondent has proposed the disposition of the original first-hand information provided. The Petitioner served several emails in 2017, 2018, and 2019 to the SEC (specifically to Respondent employee Mr. Philip Craig), seeking information regarding the progress of the investigation and the Petitioner's eligibility for a whistleblower award, based on the original whistleblower information provided on November 18, 2016.

17. After <u>three years</u> of GE MUI (see point 13 above) by SEC (Respondent) in <u>December 09, 2020</u>, SEC ordered instituting cease-and-desist, making findings, and imposing remedial sanctions.

18. Notice of Covered Action 2021-004 In the matter of General Electric Company is Notified on  <u>January 29, 2021 after one year of the order.</u>

19. Petitioner submitted the Form WB-APP dated March 1, 2021 and SEC (Respondent) acknowledged on <u>March 17, 2021</u>.

20. Notice of proposed plan of Distribution and Opportunity for comment - in the matter of General Electric Proposed distribution plan -Release No. 34 - 94323 / <u>February 28, 2022</u>.

21. Petitioner submitted the comment on <u>March 5, 2022</u> against the point 20 above, requesting to keep aside the Whistblower Award money from the overall fund for distribution.

22. Petitioner received the preliminary determination of the claims review staff on <u>April 18, 2022</u>, along with the Declaration of Michael Franck, after more than one year of WB App Form submission (i.e March 1, 2021) after deliberation through point 14 above in this section.

23. SEC (Respondent) released Order approving plan for distribution on <u>May 5, 2022</u>.

24. Petitioner submitted the response to the preliminary determination of the claims review staff on <u>May 26, 2022</u>.

25. Petitioner received the Final Order determining whistleblower award claims on <u>November 28, 2022</u> along with the Supplemental Declaration of Michael Franck.

**ARGUMENT:**

The sequence of events and the corresponding dates reveal potential instances of arbitrariness, capriciousness, or an abuse of discretion in the process of evaluating the claim, determining the penalty, and deciding on the whistleblower award. These circumstances give rise to several doubts and raise concerns about the

fairness and integrity of the entire process.

Listed are the following:

- Respondent failed to conduct a proper investigation on the original information provided by the Petitioner, thereby neglecting its duty as per the requirement outlined in *§240.21F-1* and to compensate the whistleblower who provide the original information about violation of Federal securities law, *§240.2F-2*: (a) & (b) Whistleblower who provided Information in writing to a ***possible violation*** of the federal securities law, to reopen the MUI: (as detailed in ISSUES PRESENTED FOR REVIEW:

- from Page no.4 of this document)

- The Respondent failed to adhere to the appropriate procedures for determining the penalty and whistleblower award, as outlined in §240.2F-3: Payment of Awards. These procedural deficiencies are outlined and discussed in the "ISSUES PRESENTED FOR REVIEW:

- " section, starting from page 4 of this document.

- The Respondent's internal system lacked transparency in reopening disposed MUI (Matter Under Inquiry) against the same defaulter, despite having the same nucleus of operative facts. This is in violation of §240.2F-4-(b)-(5), §240.2F-4-(c)-(1), and §240.2F-4-(d), as detailed in the "ISSUES PRESENTED FOR REVIEW:

18

- " section, starting from page 4 of this document.

- The Respondent failed to adequately consider all possible violations reported by the Petitioner in its investigation. This is evident from the reference *Document # 1993277 SUPPLEMENT to statement [1993275-2] filed by Manoranjan Rao*, which only lists the self-declared violation by General Electric Company and does not include any additional observations from the Respondent (Agency).

- The Respondent's lead accountant on the Covered Action investigation had a conflict of interest due to his involvement in the proposed disposition of the Petitioner's original whistleblower information/investigation, which is in violation of §240.2F-4. This conflict of interest is detailed in the ISSUES PRESENTED FOR REVIEW:

- on Page no.4 of this document.

The above suggests that the Respondent failed to properly discharge its duty of office, which is in violation of the SEC Division of Enforcement - Enforcement Manual Section 3: "A guide to investigation Practices". Therefore, the Petitioner requests the court to subpoena all relevant files, including the voice recording of the telephonic discussion that took place on December 6, 2016, between Mr. Philip Craig (Respondent staff) and the Petitioner, during the first half of the Eastern Standard Time (EST).

19

Honourable court is requested to ascertain whether the interview included the following discussion:

- "GE Financial/Accounting irregularity, internal accounting control issues, audit efficacy of KPMG(external) audit, non-following of US-GAAP ", with the answer being is "yes"

- "Is it related to invoicing?", with the answer being "yes".

- "Is it related to increased revenue recognition?", with the answer being "yes", where one is inflated invoicing and other being forward invoicing or pre-matured revenue recognition.

- "GE was practicing accounting malpractices during the period from 2015 to 2017, which corresponds to the time when the original whistleblower tip was provided to the Respondent (SEC) on November 18,2016," with the answer being "yes

- "Whether the investigation agency (SEC), Respondent is clear or sure that the inflated invoicing did not take place or the practice of multiple invoicing is never practiced by GE between 2015 and 2017, with the answer being "NO"

- The order instituting "cease and desist" proceedings on General Electric Company, as referenced in **Document #1993277 SUPPLEMENT to statement [1993275-2],** confirms the Company's (GE) failure to adhere to all

20

the above mentioned issues. This failure is discussed by the Petitioner and Respondent as per the ***Ref: Document #1990761:*** email correspondence between <u>December 07, 2016, and December 01, 2016, pages 30 to 42</u>, filed by Manoranjan Rao

The above clearly shows that the agency failed to discharge its duty with due-diligence, had procedural issues and provides indications of prejudiced intentions in investigation and decision to deny the Whistleblower award to the Petitioner.

Further, Petitioner request the honorable court to go through the <u>CHRONOLOGY OF EVENTS:</u> in Page 13 onwards in this brief document, which establishes the following:

a) Immediately after proposed disposition of the MUI, GE Insurance decides to disclose worsening trend in their insurance business (ref. point 15 above in section <u>CHRONOLOGY OF EVENTS:</u> page 15). This raises the possibility of a nexus between the agency and the industry.

b) The fact that the SEC took more than three years to order the instituting of cease-and-desist measures, make findings, and impose remedial sanctions raises concerns about the arbitrary and capricious nature of the process for evaluating penalties and whistleblower awards. Furthermore, the SEC's actions did not include any additional findings beyond GE's self-reporting of violations

during the fourth quarter of 2017 and first quarter of 2018 (**as noted in point 17 above** in section CHRONOLOGY OF EVENTS: page 16). While the SEC may have been following its *framework for evaluating cooperation by companies under §SEC Enforcement Manual section 6.1.2*, this should not prevent further investigation into the alleged conduct of GE, specifically the recording of revenue in excess of contract amounts when multiple units worked on the contract. Therefore, it is necessary for the court and the SEC to conduct a detailed forensic investigation to ensure justice is served.

c) The Petitioner raises concern that the delay of one year and two months by the SEC to submit the preliminary determination of the claims review staff, along with the Declaration of Michael Franck, against the submission of WB Form, suggests a lack of transparency and timeliness in the process. Additionally, it is noted that the Respondent submitted the preliminary determination report only after the Petitioner submitted a comment against the proposed plan of distribution(*refer to point 20 & 21 above* in section CHRONOLOGY OF EVENTS:*)*, which further raises questions about the Respondent's commitment to ensuring a fair and impartial process. This calls for a thorough review of the SEC's handling of this matter by the court.

d) The declaration by Michael Franck appears to have been prepared hastily and without proper due diligence, as it was later superseded by a supplemental

declaration (point 25 in section CHRONOLOGY OF EVENTS: page 17) which highlighted procedural inconsistencies and a lack of competency by Mr. Patrick Noone, the lead accountant on the Covered Action investigation, for failing to reopen the proposed disposition dated February 16, 2017. This raises concerns about the accuracy and reliability of the initial declaration and suggests that further investigation and scrutiny is required.

e) SEC preliminary determination of the claims review staff on April 18, 2022, along with the Declaration of Michael Franck (**point 22 above** in section CHRONOLOGY OF EVENTS:) in point no. 10 of *§Exhibit (see document#1990761 Page no. 65)*, states that " The MUI and formal order were prompted by another whistleblower's allegation that GE was inflating and /or prematurely recognizing revenues from long terms service agreements for turbines by manipulating its estimation of profits over the life of the contract, This whistleblower did not submit a WB-APP for an award and is not one of the claimants identified in paragraph 3, above." In-turn says there is no claim for awards. In the Final Order determining whistleblower award claims on November 28, 2022 *§Exhibit (see document#1990761 Page no. 99)*, along with the Supplemental Declaration of Michael Franck, states "Claimant 1 did not submit a response contesting the Preliminary Determinations, but Claimant 2 and Claimant 5 each submitted a timely notice contesting the preliminary

23

denial of his/her award claim.1" "The record demonstrates that Claimant 1 voluntarily provided original information to the commission and that this original information led to the successful enforcement of the Covered Action. The discrepancy between the SEC's preliminary determination and the Final Order regarding the identity of the original whistleblower raises questions about the accuracy and consistency of the SEC's findings. Specifically, it is unclear who Claimant 1 is? when they submitted the WB-APP form? and how they became the original informer? given that the Declaration of Michael Franck stated that the original informer did not submit the WB-APP form. This inconsistency warrants further investigation and clarification by the court and the SEC.

The Petitioner would like to bring to the attention of the honorable court that Mr. Sean X Mckessy (former head of the SEC's Office of the Whistleblower), (*ref:* https://www.phillipsandcohen.com/20-million-sec-whistleblower-award-goes-to-phillips-cohens-client/) the attorney for claimant No.-1, has approached the Petitioner to withdraw the appeal. In this regard, the Petitioner hereby submits a separate NOTICE OF NON-ACCEPTANCE OF SETTLEMENT along with this Petitioner's Brief.

f) It should be noted that the Petitioner provided independent original information about the violation of Securities law during the period of the violations (Years

24

2015 to 2017) carried out by the defaulter - GE, whereas the whistleblower mentioned in section (e) took two years before reporting to the SEC about the violation. Had the SEC taken earlier action based on the Petitioner's information, it could have saved one year of wrongdoing by the defaulter. Therefore, the Respondent's non-performance cannot be used as a reason to deny the whistleblower award to the Petitioner.

The actions of the Respondent staff appear to be inconsistent with the guidelines outlined in *§SEC Enforcement Manual section 3.1.3*, which emphasizes the importance of timely investigations and decision-making in promoting the public interest. By unnecessarily prolonging the investigation and delaying the determination of the whistleblower award, the Respondent's staff may have undermined the effectiveness of their investigation and compromised the pursuit of justice. This significant delay in conducting the investigation and responding to the submission of the Whistleblower Award application form not only hampers the timely collection of evidence against the perpetrators but also diminishes the overall effectiveness of the investigative process. Based on the sequence of events and the facts presented, it can be argued that the SEC's determination to deny the whistleblower award to the Petitioner was arbitrary, capricious, and an abuse of discretion. The SEC staff failed to adhere to the SEC Enforcement Manual and their own mission statement, which requires them to investigate potential

violations with integrity, fairness, commitment, and teamwork (*§SEC Enforcement Manual section 1.4.1 Mission statement* states, to investigate the potential violation with integrity, fairness, Commitment and team work).

The Petitioner contends that the above series of events (listed in Point no.7 to 16) constitutes damage control by GE in response to a possible leak of information about the possible investigation based on the initial original timely tips provided by the petitioner about their accounting practices to the Commission.

The Petitioner contends that there are many unanswered questions and potential hidden factors in the entire episode, which suggest the possibility of collusion between the respondent and other parties who may have acted in default.

Based on the circumstances presented, it is plausible that the Respondent refused to grant the Whistle Blower Award to the petitioner, as an attempt to avoid addressing any unanswered questions and possible wrongdoings. The Petitioner contends that these actions were taken to conceal any potential issues with SEC. However, the only way to substantiate these claims is through the discovery process, which the honorable court has the authority to grant.

The Petitioner contends that there is a distinct possibility that the Commission did not adhere to its own established procedures, which are intended to ensure fair, transparent, and unbiased investigations. The Petitioner respectfully urges the Honorable Court to ensure that the Commission follows its prescribed procedures,

26

as this is crucial for delivering justice to the Petitioner, instilling confidence in the investing community, safeguarding the public interest, promoting investor protection, and fulfilling the objectives of the Whistleblower program.  The time invested in the discovery process will be invaluable in achieving these objectives. The Petitioner implores the Honorable Court to initiate the discovery process and thoroughly examine the Commission's (Respondent's) response. The revelation of the truth is essential in order to determine the eligibility of the Petitioner for a Whistleblower award, benefit the Federal Enforcement Authority, and enhance the trust of the investing community.

The SEC took an unreasonably long time to investigate and determine the whistleblower award, despite the petitioner providing original information about the violation of securities laws during the years 2015 to 2017, while the defaulter GE continued to carry out violations. In contrast, the whistleblower mentioned in point (e) in Page 22 above, took two years before reporting to the SEC about the violation, but was still considered for an award.

Additionally, the SEC staff displayed procedural inconsistencies and a lack of competency, as evident from the supplemental declaration that ***confirms the failure to re-open the proposed disposition dated Feb 16, 2017***. Moreover, the declaration of Michael Franck dated April 15, 2022(***see ref: Document #1990761 page 63 to 71***) was prepared hastily without due-diligence, which was superseded

by the supplemental declaration dated October 4, 2022 (***see ref: Document #1990761*** *page 105 to 106*)

The SEC staff also worked against their own guidelines, as evident from the delay in investigation and decision-making, which goes against the *§SEC Enforcement Manual section 3.1.3 that emphasizes the importance of swift investigations for effective results and public interest*.

Therefore, it is abundantly clear that the SEC's denial of the whistleblower award to the Petitioner was a glaring display of prejudiced intention, a discriminatory mindset, and a blatant disregard for their duty. This reprehensible act not only undermines the integrity and credibility of the SEC but also contradicts their own stated mission statement and guidelines. It is imperative that such misconduct is addressed and rectified to restore public confidence in the justice system, uphold principles of fairness, accountability, and transparency, and safeguard the trust placed in regulatory authorities. The lack of transparency in this process further erodes public trust, necessitating a thorough examination and remedial measures.

**RELIEF:**

Based on the compelling arguments presented, it is undeniably justifiable and fitting to request the court to overturn the Respondent's discretionary assessment under (§240.21F-13-(a)) and grant the Petitioner the whistleblower award in the substantial amount of US$40,000,000 (Forty Million US$) or a greater sum as deemed just and appropriate. This award is warranted due to the Petitioner's provision of original and pivotal information, which played a crucial role in the successful enforcement of the Covered Action, all while undertaking significant personal risks to report the violations of securities law.

Additionally, taking into account the immense hardships endured by the Petitioner throughout the arduous six-year period in exposing the intricate operational details of the SEC, it is essential to determine and award an additional compensation that reflects fairness and equity. Granting such relief would not only recognize and honour the Petitioner's unwavering efforts but also serve as a compelling incentive for broader public engagement in reporting similar violations, thereby fostering heightened compliance with securities laws.

Thank you for taking the time to review this appeal and for considering the arguments presented. Your attention to this matter is greatly appreciated, and we trust that the honorable court will carefully consider the facts and make a fair and just decision. Once again, thank you for your dedication to this important issue.

**CERTIFICATION AND CLOSING:**

Under Federal **Rule of Civil Procedure 11,** by signing below, I certify to the best of my knowledge, information and brief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complied with the requirements of Rule11.

I agree to provide the Clerk's Office with any changes to my address, where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

Dated June 6, 2023                                        Respectfully submitted

Manoranjan Rao - Pro Se Litigant
Flat No. 606C, Maurishka Park,
Kodialbail, Mangaluru, Karnataka,
**INDIA – 575003**
Mob: **+91 95911 23504**
**Manoranjanrao@hotmail.com**

USCA Case #23-1072    Document #2003404    Filed: 06/09/2023    Page 32 of 32

# 30810144680

TO,

CLERKS OFFICE (#23-1072)

US COURT OF APPEALS

DISTRICT OF COLUMBIA CIRCUIT,

333, CONSTITUTION AVE. NW RM

WASHINGTON DC. 20001-2866

PH: +1 20 2216 7000

MANORANJAN RAO

FLAT# 606 C,

AVRISHKA PARK

KODIALBAIL, MANGALURU

KARNATAKA, INDIA

– PIN – 575003

PH: +91 9591123504